UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tyrone Lamar Roberson, # 191327,<br><br>     Plaintiff,<br><br>vs.<br><br>Ms. Kela E. Thomas, Commission of Probation, Parole and Pardon Services; William F. Marscher, III, S.C. Commission on Indigent Defense; Frederick M. Corley, Esquire; Randolph Murdaugh, III, Solicitor Attorney for the State; William T. Howell, Judge of the 14th Judicial Circuit Court of S.C.; Anthony J. Padula, Warden, Lee Corrections Institution; Major James Dean; Lieutenant A. Davis; Lieutenant Ernest Mims; Sergeant B. Cook; Sergeant K. Arens; Medical Heath Care Provider RN Ms. Fulton; RN Ms. Judy Rabon; RN Ms. McDonald; William Byars, Jr., SCDC Director, et al.; South Carolina State Budget and Control Board Committee; J. McRee, M.D., KCI Pharmacy; Juanita Moss, Food Service Supervisor; Ms. Bell, Food Service Supervisor; Ms. Norman, Food Service Supervisor; Ms. Anderson, Food Service Supervisor,<br><br>     Defendants.<br>_____ | C/A No.  2:13-1872-CMC-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**FOR PARTIAL SUMMARY DISMISSAL** |

  Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate incarcerated at Turbeville Correctional Institution.  Plaintiff brings this action against a governmental entity and employees of governmental entities, alleging violations of 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge.  *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A. For the reasons that follow, the undersigned recommends that the district judge dismiss the Amended Complaint in this case without prejudice and without issuance and service of

process as to Defendants Ms. Kela E. Thomas, William F. Marscher, III, Frederick M. Corley, Randolph Murdaugh, III, Judge William T. Howell, Major James Dean, Lieutenant Ernest Mims, Sergeant B. Cook, Sergeant K. Arens, William Byars, Jr., and the South Carolina State Budget and Control Board Committee.[1]

### A. Factual and Procedural Background

In his Amended Complaint, Plaintiff states, in pertinent part, as follows.

1. *March 25, 2010 Incident*

Plaintiff alleges that, on March 25, 2010, while he was incarcerated at Lee Correctional Institution ("Lee CI"), Defendant Sergeant K. Arens and five other unidentified officers approached him. These officers were escorting an inmate known to be homosexual to be housed in the same cell as Plaintiff. Because homosexuality is against Plaintiff's cultural, moral and social beliefs, he told Arens that he refused to be housed in the same cell as this prisoner. In response, Arens sprayed Plaintiff's eyes and face with mace.

2. *February 22, 2007 Incident*

Plaintiff states that, on February 22, 2007, Plaintiff was celled with inmate Goodyear, who was confined to a wheelchair. That morning, Goodyear was performing his ablutions and Plaintiff was making his bed, waiting for Goodyear to finish, when Defendant Corporal B. Cook unlocked their cell door for breakfast call. When Cook returned to the cell, he told Plaintiff and Goodyear that, if they were not yet ready for breakfast, he would have to re-

---

[1] In a separately-docketed order, the undersigned has authorized service against the following defendants: Anthony J. Padula, Warden, Lee Corrections Institution; Lieutenant A. Davis; Medical Heath Care Provider RN Ms.Fulton; RN Ms. Judy Rabon; RN Ms. McDonald; J. McRee, M.D., KCI Pharmacy; Juanita Moss, Food Service Supervisor; Ms. Bell, Food Service Supervisor; Ms. Norman, Food Service Supervisor; and Ms. Anderson, Food Service Supervisor. Also in that order, the undersigned has dismissed the South Carolina Department of Corrections (SCDC) as a defendant herein.

lock the cell. Plaintiff told Cook that, because of Goodyear's disability, it would take them longer to get ready than others. When Cook replied that it was now or never, Plaintiff asked for a supervisor.

In response, Cook asked Goodyear to exit the cell and Cook called for assistance. Defendant Sergeant E. Mims came first, and asked Plaintiff to turn around to be handcuffed. Then Defendant Captain James Dean came into the cell, with his mace in his hand, and told Plaintiff to turn around to be handcuffed. When Plaintiff protested that he had done nothing wrong, Dean sprayed twice into Plaintiff's eyes, face, and chest. Cook then shoved Plaintiff into the cell and locked the door.

Some ten minutes later, Dean, Mims, and Cook returned to the cell. Mims handcuffed Plaintiff and Dean escorted Plaintiff to "Medical." Dean told Nurse Owens that he needed her to do a medical report, gave her Plaintiff's name and number, and then immediately took Plaintiff to lock-up. Plaintiff was denied medical treatment and a cool shower with which to decontaminate.

3. *Conspiracy*

Plaintiff claims the existence of a conspiracy among "Defendant Kela E. Thomas of the South Carolina Department of Corrections Commission of Parole and Pardon Services, . . . the McCormick Corrections Institution of SCDC and the judicial municipality of Jasper County South Carolina Solicitor Randolph Murdaugh, III and Judge William T. Howell." (ECF No. 9 at 3.) Plaintiff argues that Thomas has applied,

> [A] new 30 year life maximum/minimum mandatory statutory sentencing requirement before parole eligibility release for felony aggravate murder to an old crime that Plaintiff was arrested for January 6, 1992 in Jasper County South Carolina that was not legislatively authorized to be retroactively applied to [Plaintiff's] sentencing situation October 23, 1992; because at the time of commission of arrest for alleged felony murder January 6, 1992 by the Judicial Municipality of Jasper County South Carolina.

(*Id.* (errors in original).)  Plaintiff contends that Thomas was "legislatively authorized" to impose only "a 20 year life maximum/minimum mandatory statutory sentencing requirement before parole eligibility released." (*Id.* at 4.)

4. *Plaintiff's Criminal Case*

Plaintiff's allegations against Defendants Murdaugh, Corley, and Marscher concern the criminal proceedings which have resulted in Plaintiff's imprisonment.  He claims that the solicitor, Defendant Randolph Murdaugh, III, misinterpreted the sentencing statute to authorize the trial judge to impose consecutive sentences with respect to Plaintiff's charges. Plaintiff contends that his trial counsel, Corley and Marscher, were "deficient" for acquiescing in Murdaugh's misinterpretation, that his "guilty plea was not entered with effective assistance of counsel," and that Defendants Corley and Marscher's advice "was not within the range of competence demanded of attorneys in criminal cases." (ECF No. 9 at 6.)

5. *Medical Care*

Plaintiff states that he has "submitted a number of request forms to medical sick-call asking to be seen" by Defendant Dr. J. McRee about a "timely medical referral" to health care providers for the surgical removal of

> [D]iverticulum ulsers intestinal small pouch or sac formed in da wall of a major organ usually the esophagus, small intestine or large intestine; that gross negligently exposes Plaintiff enlarged prostate and hold in Plaintiff stomach lining tissue; that subjects Plaintiff infections of blood screen, liver sclarosis, and excessive malnurished weight loss; that also causes Plaintiff to have terrible pain in lower left side of side of stomach area and anal area that presently afflicts Plaintiff with erectile malfunction disorder . . . .

(ECF No. 17-1 at 3 (errors in original).)  Plaintiff claims that Dr. McRee refuses to make the requested referral and also to prescribe Plaintiff "a 3,000 calorie proper vitemin [sic] and iron nutrition kosher/Halal diet." (*Id.*).

4

6. *Dietary Concerns*

Plaintiff alleges that Defendants Ms. Juanita Moss, Ms. Bell, Ms. Norman, and Ms. Anderson, "of the State Budget & Control Board Committee" (collectively, the "Food Service Defendants"), have promulgated the practice of reducing Plaintiff's meals from three to two per day. (ECF No. 17 at 4.) He adds that they are ignoring the diet prescribed by doctors at Lee CI to combat his involuntary weight loss. Plaintiff argues that these Defendants are being "deliberate[ly] indifferent" to his "helicobacte [sic] pylori and diverticulum stomach and colon disease," and serve him meats which violate his religion. (*Id.* at 5–6.) It is believed that Plaintiff refers to these Defendants as the "McCormick Correctional Institution Cafeteria Supervisors" in claiming, *inter alia*, "deliberate indifference in failing to prevent fraud or misrepresentation in the sale and dissemination of defective grinded meats and defective manufacturered plastic cook flex trays which is the proximate cause of Plaintiff injury." (*Id.* at 8–9.)

Plaintiff further contends that the "Program Services Cafeteria Food Supervisor" defendants (presumably, the Food Service Defendants), together with Defendant William Byars, Jr.,

> [W]ere grossly negligent in failing to report grinded process poltry/chicken meats et having or suspected of having and disease that may be caused by chemical terrorism, bioterrorism, radiological terrorism, epidemic or pandemic disease, or novel and highly fatal infectious agents and might pose a substantial risk of a significant number of human fatalities or incidents of permanent or long-term disability . . . to the Department of Health and Environmental Disease Control any food poison incidents which affects inmates & public health, or which create a public health emergency . . . .

(ECF No. 17-1 at 8 (errors in original).)

B. <u>Standard of Review</u>

Plaintiff filed this Complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs

of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

### C. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While Plaintiff provides sufficient factual information to withstand summary dismissal of his claims against several of the defendants (*see* footnote 1, *supra*), he fails to state a cognizable § 1983 claim against the defendants discussed below.

1. *Defendant Arens*

Plaintiff contends that Defendant Arens's use of mace against him on March 25, 2010, was in bad faith, for no legitimate purpose, and applied maliciously and sadistically for the purpose of causing Plaintiff serious bodily harm. He alleges a violation of his Eighth Amendment right to be free of cruel and unusual punishment, and asserts state law claims of assault, battery, and negligence.

Plaintiff's claim against this Defendant is subject to summary dismissal because it was filed after the expiration of the statute of limitations. As § 1983 does not contain an express statute of limitations, state law concerning limitation of actions applies in these claims. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985); *see also Burnett v. Grattan*, 468 U.S. 42 (1984). In South Carolina, the statute of limitations is generally three years for claims arising after April 5, 1988. *See* S.C. Code Ann. § 15-3-530. This statute of limitations has been held to be the applicable statute of limitations for § 1983 claims. *See Huffman v. Tuten*, 446 F. Supp. 2d 455 (D.S.C. 2006). Additionally, a cause of action which is subject to the South Carolina Tort Claims Act must be filed within two years after the date the loss was or should have been discovered, where a claim was not filed within one year of the alleged incident. S.C. Code Ann. § 15-78-110.

Plaintiff's claim concerning his injuries are barred by the applicable statute(s) of limitations. The March 25, 2010 incident and claims related thereto occurred more than three years prior to the filing of this action on June 28, 2013. Thus, Defendant Arens

7

should be summarily dismissed from this case. *See Jones v. Bock*, 549 U.S. 199, 214–15 (2007) (if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

The federal courts also look to state law to determine tolling provisions for statutes of limitations in § 1983 cases. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). The relevant tolling statute, S.C. Code Ann. § 15-3-100, states that "[w]hen the commencement of an action shall be stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action." In fact, such a statutory prohibition operates in prisoner cases brought under § 1983; the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."[2] 42 U.S.C. § 1997e(a). In the instant case, Plaintiff has provided no evidence that he filed any grievances with regard to the March 25, 2010 incident; accordingly, there is no indication that his claim should be tolled.

2. *Defendants Dean, Mims, and Cook*

With regard to the macing incident on February 22, 2007, Plaintiff claims that Defendants Dean, Mims, and Cook violated his Eighth Amendment right to be free from cruel and unusual punishment, and he further alleges state law claims of assault, battery, and negligence. These Defendants, however, are also subject to summary dismissal as

---

[2] The undersigned has not attempted to dismiss any of Plaintiff's claims pursuant to the PLRA's exhaustion requirement as "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground," *Jones v. Bock*, 549 U.S. at 215, and the complaint herein does not establish that Plaintiff has failed to exhaust his claims.

8

claims related to the February 22, 2007 incident are barred by the applicable statute of limitations. *See* discussion at paragraph C.1., *supra*.

3. *Defendant Thomas*

Plaintiff argues that Defendant Thomas subjected him to a "new" parole requirement in violation of the constitution's ex post facto clause, "without due process and equal protection of the state and federal law," which results in his exposure to "cruel or unusual or corporal punishment with false arrest and false imprisonment with excessive bail and excessive fines."[3] (ECF No. 9 at 4.) Plaintiff asks for a monetary award; a temporary restraining order against the defendants to free him from "cruel and unusual punishment with excessive bail and excessive fines imposed during court sentencing October 23, 1992"; and "to be released from illegal restraint." (*Id.* at 5.)

Plaintiff's claims against Defendant Thomas are also subject to summary dismissal. First, it is well-settled that members of the judiciary are entitled to absolute immunity from damages in a § 1983 suit. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). Moreover, absolute immunity has been extended to parole officials because they perform tasks that are functionally comparable to those of judges. *Pope v. Chew*, 521 F.2d 400, 405–06 (4th Cir. 1975); *see also Walrath v. United States*, 35 F.3d 277, 281–82 (7th Cir. 1994) (holding members of the United States Parole Commission staff and the Commissioner are absolutely immune from suit for actions taken in revoking parole); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (absolute immunity for hearing examiner who conducted detention proceeding and made recommendation to parole board); *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir. 1986) (absolute immunity for Parole Board members). Absolute immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*,

---

[3] Plaintiff also argues that he received ineffective assistance of counsel.

472 U.S. 511, 526 (1985).  Accordingly, Defendant Thomas is entitled to dismissal of Plaintiff's claims for damages under the doctrine of absolutely immunity.

As to Plaintiff's request to be released, such a request cannot be considered in a § 1983 civil rights action, but must be presented in a petition for a writ of habeas corpus, after state court remedies have been exhausted.  *See Heck v. Humphrey*, 512 U.S. 477 (1994) (explaining that release from prison is not a remedy available under 42 U.S.C. § 1983); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive, sole federal remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release).  It is settled law that, under the type of circumstance present in this case, claims seeking a "'quantum change in the level of custody,'" including "'freedom subject to the limited reporting and financial constraints of bond or parole or probation,'" are properly considered in habeas corpus.  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 873 (1st Cir. 2010) (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)); *see also* Wilkinson v. Dotson, 544 U.S. 74, 85 (2005) (Scalia, J., concurring) (approving of "quantum change" framework); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (same).

Until such time as Plaintiff has secured his release, he is barred from recovering damages in connection with his imprisonment as a judgment in his favor would imply that his parole decision was invalid.  *See Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that plaintiffs cannot recover damages under § 1983 for an allegedly unconstitutional conviction if the conviction remains valid.  *See also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding a prisoner cannot use a § 1983 action to challenge prison procedures to deprive the prisoner of good-time credits when the alleged procedural defect would, if established, "necessarily imply the invalidity of the punishment imposed").

10

*Heck*'s applicability to actions challenging the validity of parole decisions and proceedings is well-established. *See, e.g., White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997) ("A § 1983 suit like the present, contending that a state parole revocation was constitutionally invalid, challenges the 'fact or duration of [the plaintiff's] confinement'" and is barred by *Heck* (alteration in original) (quoting *Heck*, 512 U.S. at 481)); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (applying *Heck* "to proceedings that call into question the fact or duration of parole or probation"); *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995) ("Because an action attacking the validity of parole proceedings calls into question the fact and duration of confinement, it must satisfy the *Heck* element." (footnote omitted)). The Fourth Circuit, in an unpublished opinion, has agreed that *Heck* applies to § 1983 claims seeking damages for alleged constitutional violations involving parole proceedings. *See Husketh v. Sills*, 34 F. App'x 104 (4th Cir. 2002) (the preclusive rule of *Heck* extends to parole decisions); *see also Gibbs v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, No. 97-7741, 1999 WL 9941 (4th Cir. Jan. 12, 1999). Thus, Plaintiff has no claim against Defendant Thomas.

4. *Defendant Howell*

As to Defendant Judge William T. Howell, Plaintiff alleges only that he conspired with Defendant Thomas in subjecting Plaintiff to "an ex post facto violation of S.C. Constitution Article I, § 4." (ECF No. 9 at 3.) As stated in Section C.3. above in relation to Defendant Thomas, members of the judiciary are entitled to absolute immunity from damages in a § 1983 suit. *Pierson v. Ray*, 386 U.S. at 553–54. To the extent Plaintiff sets forth his allegations in an attempt to gain his release, as discussed hereinabove at Section C.3., he must present his claim in a petition for a writ of habeas corpus, after state court remedies have been exhausted. *See Heck*, 512 U.S. 477; *Preiser v. Rodriguez*, 411 U.S. at 500.

5. *Defendants Corley, Marscher, and Murdaugh*

As to these three Defendants, Plaintiff has chosen the wrong vehicle by which to press his claims. To the extent Plaintiff sets forth his allegations in an attempt to gain his release, as discussed hereinabove at Section C.3., he must present his claim(s) in a petition for a writ of habeas corpus, after state court remedies have been exhausted. *See Heck*, 512 U.S. 477; *Preiser v. Rodriguez*, 411 U.S. at 500.

If Plaintiff wishes to bring civil rights claims against Defendants Corley and Marscher, he is barred from so doing. An attorney, whether a public defender, court-appointed, or retained, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 317–24 (1981) (public defender)*; Hall v. Quillen*, 631 F.2d 1154, 1155–56 (4th Cir. 1980) (court-appointed attorney); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) (private attorney); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action' requirement ... avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."). As Plaintiff's counsel did not act under color of state law in connection with their legal representation of Plaintiff, he has failed to state a viable § 1983 claim against Defendants Corley and Marscher.

To the extent Plaintiff complains of his counsel's lack of professional proficiency, he may be asserting a cause of action for legal malpractice. Generally, such disputes are a matter of state law to be heard in the state courts, unless diversity of citizenship is present. *See Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) (stating that "the law governing legal malpractice represents a traditional exercise of state authority"). The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy

in excess of seventy-five thousand dollars ($75,000.00). Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 & nn.13–16 (1978). In the case *sub judice*, Plaintiff and Defendants Corley and Marscher are all residents of the State of South Carolina; thus, the Court has no diversity jurisdiction under 28 U.S.C. § 1332. In the absence of diversity of citizenship between the parties, such a traditionally state-law based claim may not considered by this Court. *See Cianbro Corp. v. Jeffcoat & Martin*, 804 F. Supp. 784, 788–91 (D.S.C. 1992); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989) (§ 1983 does not impose liability for violations of duties of care arising under state law).

Plaintiff is also barred from pressing a § 1983 claim against Defendant Murdaugh because, as Defendants Thomas and Howell, he is clothed with absolute immunity from monetary damages. In South Carolina, regional prosecutors are called Solicitors and Assistant Solicitors. *See* S.C. Const., art. V, § 24; S.C. Code Ann, § 1-7-310. Solicitors are elected by voters of a judicial circuit and have absolute immunity for activities in or connected with judicial proceedings, such as a criminal trial, bond hearings, grand jury proceedings, pre-trial "motions" hearings, and ancillary civil proceedings. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Burns v. Reed*, 500 U.S. 478 (1991).

It is well settled in this circuit that prosecutors are absolutely immune from liability for damages based on their decisions about "'whether and when to prosecute,'" *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996) (citation omitted), and whether or not to go forward with a prosecution, *see Springmen v. Williams*, 122 F.3d 211, 212–13 (4th Cir. 1997). Moreover, at least three other circuits have found that prosecutorial immunity extends to actions taken by a prosecutor while negotiating a plea. *See Cole v. Smith*, No.

13

97-5964, 1999 WL 685940 (6th Cir. Aug. 24, 1999); *Ferrer v. Daily*, No. 96-3155, 1996 WL 731618 (10th Cir. Dec. 20, 1996); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir.1995).  Thus, Plaintiff has failed to state a claim against Defendant Murdaugh.

6.  *South Carolina State Budget and Control Board Committee*

In connection with his claims against Dr. McRee, Plaintiff asks for monetary damages "from [the defendants'] state and federal insurance medical/Medicaid liability surplus reserve funds tax exempt municple government bonds of the S.C. State Budget & Control Board Committee of the SCDC McCormick/Kirkland Corrections Institution." (ECF No. 17-1 at 4.)  With respect to his claims against the Food Service Defendants, Plaintiff seeks monetary damages "from their state and federal insurance medical/Medicaid liability surplus reserve funds tax exempt municple government bonds of the S.C. State Budget & Control Board Committee of the SCDC McCormick/Kirkland Corrections Institution Inmate Program Services Food Service Department."  (*Id.* at 9.)

Plaintiff cannot bring a suit for damages against this Defendant as the Eleventh Amendment divests this Court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department.  The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  Such immunity extends to arms of the state, including a state's agencies and instrumentalities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *see also*

14

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation and footnote omitted).

To the extent Plaintiff moves under 42 U.S.C. § 1983, Congress has not abrogated the States' sovereign immunity under that statute. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Under *Pennhurst State School & Hospital*, a State must expressly consent to suit in a federal district court. 465 U.S. at 101–02. The State of South Carolina has not consented to suit in a federal court. *See* S.C. Code Ann. § 15-78-20(e) (expressly providing that the State of South Carolina does not waive Eleventh Amendment immunity and does not consent to suit in a federal court or in a court of another State). Therefore, the State of South Carolina is protected from Plaintiff's claims by the Eleventh Amendment. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1 (1890). Hence, Defendant South Carolina State Budget and Control Board Committee is subject to summary dismissal from this case.

7. *William Byars, Jr., SCDC Director*

As to his food-reporting claim, Plaintiff argues that Defendant Byars has been "grossly negligent," but not even "gross" negligence is actionable under 42 U.S.C. § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Daniels v. Williams*, 474 U.S. 327, 328–36 & n.3 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995) (applying *Daniels v. Williams*). Secondly, such rights statutes, such as 42 U.S.C. § 1983, do not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago Cnty. Dep't*

15

*of Soc. Servs.*, 489 U.S. 189, 200–03 (1989). Hence, Defendant Byars should be summarily dismissed from this suit.

## Conclusion

Accordingly, it is recommended that the district judge dismiss the Complaint in the above-captioned case without prejudice as to Defendants Ms. Kela E. Thomas, Solicitor Randolph Murdaugh, Judge William T. Howell, William F. Marscher, III, Frederick M. Corley, Major James Dean, Lieutenant Ernest Mims, Sergeant B. Cook, Sergeant K. Arens, William Byars, Jr., and the South Carolina State Budget and Control Board Committee.

IT IS SO RECOMMENDED.


                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

September 17, 2013
Charleston, South Carolina

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).