UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tyrone Lamar Roberson, # 191327, | ) | C/A No. 2:13-cv-1872-BHH-WWD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Ms. Kela E. Thomas, Commission of | ) | |
| Probation, Parole and Pardon Services; | ) | |
| William F. Marscher, III, S.C. Commission on | ) | **REPORT AND RECOMMENDATION** |
| Indigent Defense; Frederick M. Corley, | ) | |
| Esquire; Randolph Murdaugh, III, Solicitor | ) | |
| Attorney for the State; William T. Howell, | ) | |
| Judge of the 14th Judicial Circuit Court of | ) | |
| S.C.; Anthony J. Padula, Warden, Lee | ) | |
| Corrections Institution; Major James Dean; | ) | |
| Lieutenant A. Davis; Lieutenant Ernest Mims; | ) | |
| Sergeant B. Cook; Sergeant K. Arens; | ) | |
| Medical Heath Care Provider RN Ms. Fulton; | ) | |
| RN Ms. Judy Rabon; RN Ms. McDonald; | ) | |
| William Byars, Jr., SCDC Director, et al.; | ) | |
| South Carolina State Budget and Control | ) | |
| Board Committee; J. McRee, M.D., KCI | ) | |
| Pharmacy; Juanita Moss, Food Service | ) | |
| Supervisor; Ms. Bell, Food Service | ) | |
| Supervisor; Ms. Norman, Food Service | ) | |
| Supervisor; Ms. Anderson, Food Service | ) | |
| Supervisor, | ) | |
| | ) | |
| Defendants. | ) | |

_____

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a state prisoner

_____

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

1

proceeding <u>pro se</u> and <u>in forma pauperis</u>, is before the undersigned United States

Magistrate Judge for a report and recommendation on the Defendants' summary

judgment motion under FED.R.CIV.P. 56 filed on September 17, 2014. Dkt. 105. 28

U.S.C. § 636(b)(1), and Local Rule 73.02(B)(2)(d), D.S.C.

       The Plaintiff, Tyrone Lamar Roberson, # 191327, is an inmate incarcerated at

McCormick Correctional Institution, (MCI), a facility of the South Carolina Department

of Corrections (SCDC). On July 9, 2013, he sued a plethora of employees of the SCDC

and alleged that they had subjected him to cruel and unusual punishments in violation

of the Eight Amendment's prohibition of such punishments.(Dkt. 1). He amended his

complaint on August 8, 2013, and again on September 17, 2013. (Dkt. 9, 28).

       On October 22, 2013, the Honorable Richard Mark Gergel, United States District

Judge, dismissed the following Defendants: Kela E. Thomas, Solicitor Randolph

Murdaugh, Judge William T. Howell, William F. Marscher, III, Frederick M. Corley, Major

James Dean, Lieutenant Ernest Mims, Sergeant B. Cook, Sergeant K. Arens, William

Byars, Jr., and the South Carolina Budget and Control Board Committee. (Dkt. 41).

       Following an unsuccessful Interlocutory Appeal and extensive motions practice,

the case was reassigned to the undersigned on June 5, 2014. (Dkt 77). Defendants

Anderson, Ms. Bell, A. Davis, Ms Fulton, J. McRee, Juanita Moss, Ms. Norman, and

Anthony J. Padula filed their motion for summary judgment on September 17, 2014 ,

with various affidavits and exhibits. On that same day, the Plaintiff was provided an

order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) advising him of

---

be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983.

the importance of such motions and of the need for him to file an adequate response. The Plaintiff filed a memorandum in opposition to the motion on October 22, 2014, with ninety-two (92) pages of exhibits, including copies of his grievances and responses thereto, and his medical records.  Hence, it appears consideration of the motion is appropriate.

## LEGAL STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. See  Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); see also  Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is a genuine material issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. FED.R.CIV.P. 56(c).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). See also  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir.1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  If the movant carries its burden of showing there is an absence of evidence to support a claim, then the Plaintiff must

3

demonstrate by affidavits,[2] depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Id. at 324–25.

An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the Plaintiff. Anderson, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. Id. A complete failure of proof concerning an essential element of the Plaintiff's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 251.

## DISCUSSION

A review of the record and relevant case law reveals that the Defendants' motion should be granted and this matter ended.

In the Report and Recommendation for Partial Summary Dismissal dated September 17, 2013, (Dkt. 29) of then United States Magistrate Judge Bruce Howe Hendricks, Judge Hendricks summarizes the allegations of the Complaint as follows:

1. Medical Care.

Plaintiff states that he has "submitted a number of request forms to medical sick-call asking to be seen" by defendant Dr. J. McRee about a "timely medical referral" to healthcare providers for the surgical removal of

[D]iverticulum ulcers intestinal small pouch or sac formed in da wall of a major organ usually the esophagus, small intestine or large intestine; that

---

[2] The Plaintiff's amended complaint is verified and purports to be based upon his personal knowledge. In this circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991). Therefore, the court construes all material factual disputes in favor of the Plaintiff as the non-moving party. A verified complaint based upon personal knowledge, standing alone, may defeat a motion for summary judgment. Id.

4

gross negligently exposes Plaintiff enlarged prostate and hold in Plaintiff
stomach lining tissue; that subjects Plaintiff infections of blood screen,
liver sclerosis, and excessive malnourished weight loss; that also causes
Plaintiff to have terrible pain in lower left side of stomach area and anal
area that presently afflicts Plaintiff with erectile malfunction disorder...

(Dkt. 17-1 at 3 and Dkt. 24 at 3) (errors in original).)  The Plaintiff claims that Dr.
McRee refuses to make the requested referral and also to prescribe the Plaintiff "a
3000 calorie proper vitemin [sic] and iron nutrition kosher/Halal diet." (Id.).

2. Dietary Concerns.

        The Plaintiff alleges that Defendants Ms. Juanita Moss, Ms. Bell, Ms. Norman,
and Ms. Anderson, (collectively, the "Food Service Defendants"), have promulgated
the practice of reducing the Plaintiff's meals from three to two per day. (Dkt. No. 17 at
4 and ECF No. 28 at 4).  He adds that they are ignoring the diet prescribed by
doctors at LCI  to combat his involuntary weight loss. The Plaintiff argues that the
Food Service Defendants are being "deliberate[ly] indifferent" to his "helicobacte [sic]
pylori and diverticulum stomach and colon disease," and serve him meats which
violate his religion. (ECF No. 17 at 4-5 and ECF No. 28 at 4-5).
        He further alleges that the Food Service Defendants serve him defective
ground meats and defective manufactured plastic cook flex trays which have caused
him injury. (ECF No. 17 at 8-9 and ECF No. 28 at 8-9).  Finally, the Plaintiff claims
that the Food Service Defendants:

        [W]ere grossly negligent in failing to report grinded process poultry/chicken
        meats et having or suspected of having and disease that may be caused by
        chemical terrorism, bioterrorism, radiological terrorism, epidemic or pandemic
        disease, or novel and highly fatal infectious agents and might pose a substantial
        risk of a significant number of human fatalities or incidents of permanent or
        long-term disability . . . to the Department of Health and Environmental Disease
        Control any food poison incidents which affects inmates & public health, or which
        create a public health emergency ...

(Dkt 17-1 at 7- 8 and Dkt. 28 at 7-8) (errors in original).

        In response, the moving Defendants filed the affidavit of Defendant John B.

McRee, M.D., who is the Acting Medical Director of the SCDC who averred:

        I am familiar with Plaintiff Tyrone Roberson. I have participated in his medical
        care by personally seeing him in sick call on a number of occasions and also by
        reviewing medical chart entries from SCDC nurses and directing his medical care
        via instructions back to the nurses.

5

Plaintiff was screened for diabetes on March 19, 2013. His lab work was normal for serum glucose. He is not diabetic.

On March 4, 2013, and April 4, 2013, plaintiff claimed to have diverticulitis. However, he had no fever which I would expect. I concluded he does not have diverticulitis.
On April 14, 2012, his PSA screening for prostate cancer was normal.

On December 4, 2012, and December 10, 2012, he claimed to have stomach ulcers and asked for diagnostic testing and a referral to a specialist. There was no indication of a need for either testing or a referral.

He does not currently need surgery for any health problems.

The medical records reveal that since 2011, Plaintiff has been alternating between the regular diet for periods of time and the alternate diet for periods of time. The changes have been at his request and have always been approved. On March 1, 2013, he requested an American Diabetes Association (ADA) 3000 calorie diet, but he is not diabetic so there was no medical reason for him to have the ADA 3000 calorie diet.

On November 18, 2013, he requested the ADA 3000 calorie diet again or a kosher diet. He was denied the ADA 3000 calorie diet and was told that a change to a religious diet must be approved by the chaplain.

Plaintiff has lost weight since coming into SCDC, but he has never appeared to me to be malnourished.

The Defendant also submitted the Affidavit of Willie F. Smith who averred:

1. My name is Willie F. Smith. I am employed by the South Carolina Department of Corrections (SCDC) as the Food Service Administrator. As such, I oversee food service to all inmates within the South Carolina Department of Corrections at all institutions.

2. Attached are copies of the master menus for SCDC. We operate on a six-week cycle with three menus for each week. The week starts on a Sunday and ends on a Saturday. There are three menus: regular, alternate, and therapeutic entre menus.

3. The regular menu is served to the vast majority of inmates. It contains some meat items, but no pork. No pork derivative is used for seasoning or cooking.

4. The alternate menu is strictly vegetarian. Inmates may request it in place of

the regular menu. If requested for religious reasons, the request must be approved by the institutional chaplain.

5. The therapeutic menu is for those who are under a special diet prescribed by a doctor due to medical reasons. For example, it meets the requirements of the American Diabetes Association (ADA) 3000 calorie diet.

6. SCDC plans its menus based on nutritional guidelines, not inmate religious preference.

7. All menus are evaluated and certified as nutritionally sound by a registered dietician.

8. All menus provide adequate nutritional and caloric value based on the recommended dietary allowances published by the Food and Nutrition Board of the National Research Council at the National Academy of Sciences.

9. SCDC is unable to afford a Halal menu option that would include ritually-slaughtered animals due to the increased costs for acquiring such meat as well as storing and preparing it separately from non-ritually-slaughtered animals.

10. SCDC is unable to offer a Halal menu option due to the perception of favoritism among inmates.

11. If SCDC offered a Halal, menu option, there would likely be a flood of other inmate dietary requests.

12. On Monday through Friday, all inmates receive three meals. In 2008, SCDC began serving a brunch meal on Saturday and Sunday so that inmates on the regular and alternate menus receive two meals on those days instead of three meals. Under the therapeutic menu, there are three meals served per day on Saturday and Sunday. Diabetics are also provided a bedtime snack on the weekends.

13. On Saturday and Sunday, inmates are not working. They are sedentary. Some inmates sleep in on those days. Also, many inmates attend church and/or receive visitors on Sunday, and the two meal schedule coordinated better with visitation and church services. Further, due to staff shortages, it was determined that serving two meals per day on Saturday and Sunday assisted with security of the institutions with respect to movement of inmates within the institution to and from dining areas.

14. The daily caloric content of the two meals on Saturday and Sunday is virtually identical to the daily caloric content for the three meals per day that are served Monday through Friday. The nutritional content of the two meals on

7

Saturday and Sunday is virtually identical to the three meals per day which are served on Monday through Friday.

15. The South Carolina Department of Health and Environmental Control conducts unannounced routine inspections at correctional facility kitchens for the purpose of insuring that food is being prepared and served to inmates in a safe and sanitary manner.

16. Food is served to inmates on flex trays which are made from a food safe silicone material. Flex trays are used instead of metal or plastic trays to prevent inmates from making weapons or keys out of serving trays. Flex trays are widely used throughout federal and state correctional institutions.

The Defendant submitted the Affidavit of Bennie Colclough who averred:

1. My name is Bennie Colclough and I am employed by the South Carolina Department of Corrections (SCDC) as Branch Chief of Chaplaincy.

2. I am familiar with the Muslim faith and the requirements of the Quran with respect to Halal products.

3. Halal means to kill an animal in the manner prescribed by Muslim law. Halal meat is ritually slaughtered and prepared according to Islamic specifications .

4. A Muslim may accommodate his faith without Halal products where the availability of such products is beyond his control.

5. According to the Quran, if Halal products are not available it is acceptable for a Muslim to eat vegetarian cuisine or non-pork meat in order to maintain nutrition and health.

6. SCDC offers inmates three menu choices: regular, alternate, and therapeutic entree menus. None of the menus contain pork or pork products. The alternate menu is totally vegetarian.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's

complete dependency upon prison medical staff to provide essential medical services. Id. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. Id. at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. Id. at 105–106.

In order prevail on a claim of alleged medical indifference, as here, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A Defendant acts recklessly by disregarding a substantial risk of danger that is either known to the Defendant or which would be apparent to a reasonable person in the Defendant's position." Miltier v. Beorn, 896 F.2d 848, 851–52 (4 th Cir.1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. Id. Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.

9

Wright v. Collins, 766 F.2d 841, 849 (4 th Cir.1985).

While the Plaintiff may have shown that he has various medical needs, he has

presented no evidence whatsoever that the Defendants were deliberately indifferent to

them.  To the contrary, his complaints resulted in successive examinations by medical

staff members, medical testing performed, and prescriptions being issued.  There is

neither evidence in the record that Dr. McRee or anyone else refused to treat him, nor

that the treatment provided was purposefully inadequate or harmful.  Having failed to

present any evidence of deliberate indifference, the Plaintiff's Eighth Amendment

medical claim is meritless and subject to summary judgment.

Second, the Plaintiff makes a number of allegations concerning the food

served to him by SCDC.  These allegations fall into two categories: (1) entitlement to a

religious diet and (2) non-religious complaints about food.  They will be discussed in

seriatim:

### A. Entitlement to a  Religious Diet

Inmates are entitled to pork-free diets in conformance with their religious beliefs.

Ross v. Blackledge, 477 F. 2d 616 (4th Cir. 1973).  The Plaintiff is a Muslim, and

Muslims are forbidden to eat pork.  They may eat other meats, provided it is Halal,

meaning it is ritually slaughtered and prepared according to Islamic traditions.  See,

Shakur v Schirro, 514 F.3d 878, n. 2 (9th Cir. 2008).  The Plaintiff claims he is entitled

to a Halal diet, but SCDC does not offer one and the Plaintiff is not entitled to one.

In Watts v Byars, C/A No. 6:12-1867-JKA-KFM, Plaintiff Watts filed an action

claiming that SCDC officials violated his rights to free exercise of religion under the First

Amendment and under the Religious Land Use and Institutionalized Persons Act

(RLUIPA), 42 U.S.C. 2000cc, et seq. because SCDC did not accommodate his request for a Halal diet.  The Court adopted and approved the Report of Recommendation of a Magistrate Judge that the Plaintiff inmate was not entitled to a Halal diet and the SCDC Defendants were entitled to summary judgment.

Likewise, here it appears that the Defendants are entitled to summary judgment under both a RLUIPA and a First Amendment and analysis.

The Supreme Court has noted that lawmakers supporting RLUIPA "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources'." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (citation omitted).  The Plaintiff must bear the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. See 42 USC §2000cc - 2(b).

RLUIPA does not define the term "substantial burden."  However, the Supreme Court has stated "that for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs'". Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006), (quoting Thomas v. Review Board of Indiana Employment Security Division, 450 U.S. 707, 718 (1981)).  If a Plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §2000cc - 1(a); Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009).

11

While SCDC does not offer a Halal diet to inmates, as shown in the Affidavit of Willie F. Smith, SCDC Food Service Administrator (Def. Ex. 3), SCDC does offer three (3)  menus to inmates: a regular diet, which contains meat but no pork; an alternate diet, which is vegetarian; and a therapeutic diet, which is prescribed by a doctor for a medical condition.  There are no pork products and no pork derivatives whatsoever on any SCDC menu. Id.

Non-Halal meats, except pork, can be eaten by Muslims in order to maintain nutrition and health and with no intention to violate Islamic law. See supra,  Aff. of SCDC Chaplain Bennie Colclough (Def. Ex. 4).  Chaplain Colclough attests that a Muslim may accommodate his faith without Halal products where the availability of such products is beyond his control.  In such a case, it is acceptable for a Muslim to eat either non-pork meat or vegetarian cuisine, both of which are offered by SCDC.  Thus, the Plaintiff has failed to show that the Defendants substantially burdened his right to the free exercise of his religion by not providing him with a Halal menu. See Malik v. Sabree, C.A. No. 8:06-319-RBH, 2007 WL 781640 (D.S.C. March 13, 2007) (same).

Furthermore, even assuming that the failure of SCDC to provide the Plaintiff a Halal diet constitutes a substantial burden on his freedom of religion, the Defendants have shown that the policy in question is the least restrictive means of furthering a compelling governmental interest.  According to the affidavit of Willie F. Smith (Def. Ex. 3), SCDC is unable to afford a Halal menu option that would include ritually-slaughtered animals due to the increased costs requiring obtaining such meat as well as storing and preparing it separately from non-ritually slaughtered animals.  Smith also attests that SCDC is unable to offer a Halal menu option due to the perception of favoritism among

12

inmates and he projects a flood of other dietary requests if a Halal option is offered. These concerns are all legitimate penological concerns. The least restrictive means of furthering these legitimate concerns is to offer the regular menu and the alternate vegetarian menu which contain no pork and which do not violate Islamic beliefs.

Moreover, the Plaintiff is not being compelled to eat any non-Halal meat. If he eats from the regular menu, he can simply decline to eat any meat products which are served to him. If he contends this will have a detrimental effect on his health due to reduced nutritional and caloric content, he can choose the vegetarian menu which is consistent with the Islamic faith and which is certified as nutritionally sound by a registered dietician based on recommended dietary allowances published by the Food and Nutrition Board of the National Research Council at the National Academy of Sciences. See Aff. Smith, supra.

In short, the Defendants have demonstrated that the least restrictive means of furthering compelling penological interests of institutional security and operational costs is to offer the regular and alternate menus. Accordingly, summary judgment should be granted pursuant to RLUIPA,[3] and the First Amendment. The Plaintiff's religious rights have not been violated by the Defendants.

## B. NON-RELIGIOUS COMPLAINTS ABOUT FOOD

The Plaintiff complains that his food lacks adequate nutritional and caloric content, that he only gets two (2) meals on Saturday and Sunday, that there are

---

[3] Since it appears that the Defendants are entitled to summary judgment under the "more searching" strict scrutiny standard of RLUIPA, then the Plaintiff's suit should also fail under the First Amendment analysis. Lovelace v. Lee, 472 F.3rd 174 at 198 n.8 (4th Cir. 2006) (citing 42 U.S.C. § 2000CC-2).

13

unsanitary food preparation methods employed at SCDC, that the food makes him sick, and that the plastic flex serving trays used by SCDC were defectively manufactured and have somehow caused him damage.  These claims fail as well.

In his Affidavit, Willie F. Smith, SCDC Food Administrator, attests that all SCDC menus are evaluated and certified as nutritionally sound by a registered dietician and provide adequate nutritional and caloric value based on the recommended dietary allowances published by the Food and Nutrition Board of the National Research Council at the National Academy of Sciences.  Copies of the actual SCDC menus are attached to the Smith Affidavit.  Smith also indicates that the South Carolina Department of Health and Environmental Control conducts unannounced routine inspections at correctional facility kitchens for the purpose of ensuring that food is being prepared and served to inmates in a safe and sanitary manner.

The Smith Affidavit also sets forth the rationale and justification for SCDC only serving two (2) meals per day on the regular and alternate menus on Saturday and Sunday.  These include the facts that inmates are not working, some sleep in on weekends, some attend church and/or see visitors, and the two meal schedule coordinates better with this.  Furthermore, two (2) meals per day on Saturday and Sunday assists with the security of the institution with respect to movement of inmates within the institution.

These are all legitimate penological concerns.  Decisions made by prison officials are entitled to significant deference. Taylor v. Freeman, 34 F.3rd 266 (4th Cir. 1994).  Absent extraordinary circumstances, the courts may not second-guess prison administrators, nor should federal courts immerse themselves in the management of

14

state prisons. Id.  The test for a prison regulation that allegedly violates an inmate's

constitutional rights is whether the regulation is reasonably related to legitimate

peneological interests. Turner v Safley , 482 U.S. 78 (1987).  In order for the restriction

of food to rise to the level of a constitutional violation, there must be some facts of

adverse effects caused by the condition and inadequacy of the food. Johnson v Ozmint,

456 F. Supp. 2d 688 (DSC 2006).

Here, the medical records reflect that the Plaintiff has lost weight while

incarcerated at SCDC.  In his Affidavit, however, John B. McRee, M.D., attests that

while the Plaintiff has lost weight, he has never appeared to be malnourished and is

generally healthy.  There is no evidence that the food being served to the Plaintiff is

making him sick.  The Plaintiff has been provided all of his medical records, but he had

failed to point the court to any portion of his medical records that could demonstrate

that the food he is served is making him ill.  His speculative conclusory allegations to

the contrary should be accorded no weight.

Plaintiff has also complained that he has found small bones in his food, and he

was instructed that if he finds a bone he should present it to the food director at the

institution for evidence. See Def. Ex. 6, also filed by the Plaintiff in Dkt. 28-1, page 15 of

20.  Regardless, occasional incidents of foreign objects in food simply does not rise to

the level of a legitimate Eighth Amendment claim. Lunsford v. Reynolds, 376 F. Supp

526 (W.D. Va. 1974).

Finally, the Affidavit of Willie F. Smith explains what flex trays are and why they

are used within SCDC institutions.  A flex tray is a food serving tray made from food

safe silicone material which is used instead of metal or plastic trays to prevent inmates

15

from making weapons or keys out of metal or plastic trays. Flex trays are widely used throughout federal and state correctional institutions and promote a valid penological concern. Id. The Defendants are entitled to judgment as a matter of law on this complaint.

CONCLUSION

Accordingly for the aforementioned reasons, it is recommended that the Defendants' motion for summary judgment be granted, any outstanding motions be denied as moot, and this matter ended.

IT IS SO RECOMMENDED.

December 16, 2014
Charleston, South Carolina

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).